*166 Opinion by
Mr. Justice Moore.
Plaintiff in error will be designated as the bank and defendant in error will be referred to by name. ■ ;
Klein commenced the action for the cancellation of a promissory note dated January 25, 1962, payable to the bank. This note was executed by Klein and delivered to the bank in order that a prior note executed by him to one Perlenfein, which was in default, could be placed in “bankable condition.” In his complaint Klein alleged that there was a failure of consideration for the note executed and delivered by him to Perlenfein on August 26, 1959; that after it was signed a material alteration in its terms was made by the bank; and that there was no consideration for the second note of January 25, 1962.
By its answer the bank denied that it had altered the terms of the note; affirmatively alleged that it was a holder in due course of the note of August 26, 1959, which it purchased in good faith; that the note was regular on its face; and that the note of January 25, 1962, was given as consideration for an extension of time for payment of the older note, and forbearance on the part of the bank to enforce payment thereof. For its counterclaim the bank prayed for judgment against Klein on the note of January 25, 1962, in the sum of $4,380.58 together with interest, attorney’s fees,' -and costs.
The facts surrounding the signing of the notes involved in this action, and those upon which the bank claims it became a holder in due course, are as follows: Klein is a farmer and Perlenfein was engaged in the farm implement business at Yuma, Colorado. In August, 1959, Perlenfein solicited an order from Klein for the sale of a tractor for delivery “on or before April 1960.” Perlenfein represented to Klein that there would be no obligation on his part to actually buy the tractor and that the purpose of the written “Customer’s Order” was to enable Perlenfein to secure a tractor at a reduced *167 price to him of about $900. On August 26, 1959, Klein was persuaded to sign such an order which contained the express provision that, “This order subject to cancellation any time before delivery date.” About two months after signing it the order was cancelled by Klein.
In addition to the customer’s order Klein executed a promissory note which in pertinent part was as follows:
“$4000.00 8/26 1959
“For value received, I promise to pay to Perlenfein Implement or order Four Thousand and no--------------Dollars in_ equal consecutive monthly installments of $_each, commencing_ 19_ or as indicated in the following schedule of payments:
$1340.00 on Nov 1 1960
$1340.00 on Nov 1 1961
$1320.00 on Nov 1 1962
with interest from maturity until paid at the rate of __per cent, per annum, * * *. This note arises out of the purchase from the payee of J.I. Case goods and the transfer of this note shall operate to pass title to the property described in a conditional sales contract between the parties of even date herewith to secure the payment of this note. Reference is hereby made to said contract of conditional sale for the nature and extent of the security and the rights of the holder thereof in the event of default.”
The note was attached to the conditional sales contract to which it made reference. The trial court found, with an abundance of evidence supporting it, that the space provided on the printed form of both the note and the conditional sales contract for the rate of interest to be paid, was not filled in at the time those instruments were signed by Klein. It is further clear that Klein did not acknowledge his signature on the conditional sales contract before anyone at any time. However, under the notarial seal and signature of Thomas E. Fitzgerald, an officer of the bank, it is asserted that, “The fore *168 going instrument was acknowledged before me this 28th day of August, 1959 by Norbert Klein.” On the 28th day of August, Perlenfein “sold” the note and delivered it and the conditional sales contract to the bank, without the knowledge of Klein. Thomas E. Fitzgerald admits that he was not present when the note and conditional sales contract were signed by Klein and that Klein was not present when the note was purchased by the bank. After the note was delivered to Perlenfein the blank space on it which provided for insertion of the rate of interest, was filled in by insertion of ■ the figure “8.” The space for insertion of an interest rate remained blank on the conditional sales contract. Thomas E. Fitzgerald who admittedly affixed his notarial seal and signature on August 28, 1959, to a false statement that Klein had acknowledged the sales contract before him on that date, testified, with reference to whether he had inserted the figure 8 in the blank interest space, that, “I still can’t swear that is my ‘8.’ ” The following question and answer appears in the record:
“Q. There is some doubt in your mind whether you .inserted the ‘8’ in exhibit A that provides for the interest rate?
“A. I can’t swear to it.”
Counsel for Klein called one Ruby S. Stephan who qualified as a handwriting expert and “certified graphoanalyst.” She testified at length concerning her training and experience, and outlined in detail the study made by her with relation to the figure 8 which was inserted in the note. It was her opinion that the 8 was written in the note by L. E. Fitzgerald who was president of the bank and who admittedly wrote the second note dated January 25, 1962.
There was other evidence concerning how the 8 was inserted in the note. Perlenfein testified that he thought he wrote it in the note when it was first prepared by him and signed by Klein. It is patently apparent that the ink in the 8 is a different color from all the rest of *169 the written portions of the note. Perlenfein’s statement in this connection is diametrically opposed to that contained in an affidavit which was signed and sworn to by him before the referee in his bankruptcy proceedings. In that affidavit made prior to his testimony the following appears:
“* * * The form provides a blank to be used to insert the rate of interest after the maturity of each installment. However, since I knew the order would be can-celled and no installment would ever be due, I did not enter any interest rate on the form * * *. On the bottom of that form [conditional sales contract] where I asked him to sign as part of the order there is a note form, which Norbert H. Klein also signed as part of the order. On this note form I indicated that the $4,000.00 was due in three installments the same as referred to above and I omitted any rate of interest in the form.” (Emphasis supplied.)
The court, in consideration of all the facts and circumstances relating to the appearance of the figure 8 in the space provided for rate of interest, entered specific findings as follows:
“The evidence leaves much to be desired by way of clarity in many particulars, and in many instances is flatly contradictory. The Court is persuaded to adopt the testimony of the Plaintiff as the true account of the original transaction between the Plaintiff and Perlenfein, and finds, as between them, the purpose of this transaction was to enable Perlenfein to secure an additional tractor at a lower price; that it was not contemplated that the Plaintiff would actually take delivery of a tractor, and that the plaintiff advised Perlenfein within the time contemplated by the parties that he did not want a tractor; that the interest blanks on the various documents involved were not filled in and that the conditional sales contract was neither acknowledged nor complete upon its face.
“THE COURT FURTHER FINDS that there was no *170 consideration for the original note, Exhibit A, arid if it could be construed that there was consideration there has been a failure of the same; that as between 'the plaintiff and Perlenfein the Plaintiff had a valid; defense to said note, Exhibit A; that the sales slip, "the note and conditional sales contract were contemporaneously executed documents incident to the transaction involved; that none of these three documents were negotiable, either being incomplete on their face, or subject to a condition.
“THE COURT FURTHER FINDS that the Defendant bank was note (sic) a bona fide holder for value without notice, or holder in due course of said note or conditional sales contract; that the addition of the interest rate on the face of the note was a material alteration of the note; that for the purpose of this case it is not material whose hand held the pen that made the ‘8’ in question. Whether it was either of the Fitzgeralds, Perlenfein or someone else is of no moment so long as the alteration was made at the time or after the delivery of the note to the bank and with the knowledge of the Defendant bank, which the Court finds the fact to have been.
“The bank, therefore, held this note, Exhibit A, subject to any defense that the Plaintiff had against Perlenfein.”
Statutory provisions which are pertinent to the questions raised by the record in this case are as follows: C.R.S. 1963, 73-1-1:
“The legal rate of interest on the forbearance or loan of any money when there is no agreement between the parties, as specified in section 73-1-3, shall be at the rate of six per cent per annum.”
C.R.S. 1963, 73-1-2:
“Creditors shall be allowed to receive interest, when there is no agreement as to the rate thereof, at the rate of six per cent per annum, for all moneys after they *171 become due, on any bill, bond, promissory note or other instrument of writing, * *
Applying the foregoing provisions to the facts as found by the trial court, the legal rate of interest payable on the note of August 26, 1959, would be 6 per cent per annum after maturity rather than 8 per cent. The attempt to increase the interest rate from 6 per cent to 8 per cent was a material alteration in the terms of the note.
C.R.S. 1963, 95-1-124 provides that:
“(1) Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers.
“(2) But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor.”
C.R.S. 1963, 95-1-125, defines material alterations in a negotiable instrument as follows: * * *
“ (b) The date;
“ (c) The sum payable, either for principal or interest;
In Hoopes v. Collingwood, 10 Colo. 107, 13 Pac. 909, and in Ayres v. Walker, 54 Colo. 571, 131 Pac. 384, the above quoted statutes dealing with the effect of an alteration of a negotiable instrument were held to invalidate promissory notes which were altered under circumstances similar to those present in the instant case.
The trial court, having found on competent evidence that the bank was not a holder in due course, did not err in concluding that all the defenses which Klein had against Perlenfein were equally available against the bank.
The judgment is affirmed.
Mr. Justice McWilliams and Mr. Justice Schauer concur.